UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KELVIN M. MCCRAY,

       Plaintiff,

v.                                                                    Case No. 2:08-cv-106
                                                                      HON. R. ALLAN EDGAR
JERI-ANN SHERRY, et al.,

       Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Kelvin M. McCray, an inmate currently confined at the Lakeland Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Jeri-Ann Sherry, Jackie Nadeau, M. Johnson, Assistant Resident Unit Supervisor Unknown Beaulieu, and Resident Unit Officer Unknown Schroder.

Plaintiff complains of events that occurred while he was housed at the Straits Correctional Facility (KTF). When Plaintiff arrived at KTF, he was assigned to a top bunk. Plaintiff attempted to access his bunk by using a small stool that was in his cell, despite the fact that the words "Not a Step" were stenciled on the stool. When the stool tipped over, knocking Plaintiff to the floor, he removed a chair from the day-room and placed it in his cell in order to have something sturdier to stand on when accessing his bunk. Defendant Schroder removed the chair and advised Plaintiff that housing rules prohibited the chair being in his cell, and that Plaintiff would have to use the stool or stand on the lower bunk. Plaintiff explained his problem to Defendant Beaulieu, who also stated that Plaintiff could not have a chair in his cell, and he would have to access his bunk in the best way

he could.  Plaintiff grieved the situation but received no relief.  On December 26, 2007, Plaintiff fell

while attempting to access his top bunk by stepping on the lower bunk.  Plaintiff was taken by

ambulance to War Memorial Hospital in Sault Ste. Marie.  Plaintiff sustained injuries to his lower

back and arm.  Plaintiff filed a grievance regarding the unsafe methods that prisoners were forced

to use to access top bunks, but the grievance was denied as duplicating Plaintiff's earlier grievance.

Plaintiff later learned that in March and May 2007, before he arrived at KTF, the issue of access to

top bunks had been raised by prisoners at the Warden's Forum, but no steps were taken to rectify the

situation.

        Plaintiff claims that Defendants' actions violated his rights under the Eighth

Amendment to the United States Constitution.  Plaintiff is suing Defendants in their individual

capacities and is seeking damages and equitable relief.

        Presently before the Court are the parties' Motions for Summary Judgment, pursuant

to Fed. R. Civ. P. 56 (docket #13 and #31).  The parties have filed responses and replies (docket #22,

#25, and #29) and the matter is ready for decision.  Summary judgment is appropriate only if the

moving party establishes that there is no genuine issue of material fact for trial and that he is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-

323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support

a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions,

answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for

trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific

facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The

evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty*

- 2 -

*Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.  *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants claim they are entitled to summary judgment on Plaintiff's Eighth Amendment claims.  The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

An Eighth Amendment claim comprises objective and subjective components:  (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind.  *Farmer v. Brennan*, 511 U.S. 825, 834 1977 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir. 1997).  A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety.  *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly).  The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.  *Farmer*, 511 U.S. at 837.  Thus, the mental state required for an Eighth Amendment claim is not actual intent, but something close to common-law recklessness.  *Hubbert v. Brown*, Nos. 95-1983, 95-1988, 96-1078, 1997 WL 242084, at *5 (6th Cir. May 18, 1997) (relying on *Farmer*, 511 U.S. at 836 n.4.

The reason for focusing on a defendant's mental attitude is to isolate those defendants who inflict punishment.  *Farmer*, 511 U.S. at 839.  The deliberate indifference standard "describes a state of mind more blameworthy than negligence."  *Id.*  at 835; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) ("conduct that does not purport to be punishment at all must involve more than the ordinary lack of due care for the prisoner's interests or safety").  As the Supreme Court explained:

> The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation.  The common law reflects such concerns when it imposes tort liability on a purely objective basis.  But an official's failure to alleviate a significant risk that he should have perceived but did not, while no

> cause for commendation, cannot under our cases be condemned as the
> infliction of punishment.

*Farmer*, 511 U.S. at 837-38 (citations omitted).  Thus, accidents, mistakes, and other types of

negligence are not constitutional violations merely because the victim is a prisoner.  *Acord v. Brown*,

No. 93-2083, 1994 WL 679365, at *2 (6th Cir. Dec. 5, 1994) (citing *Estelle v. Gamble*, 429 U.S. 97,

106 (1976)).  Rather, what is required is a conscious disregard of a substantial risk of harm.  *Farmer*,

511 U.S. at 839.

As noted above, Plaintiff fell while attempting to access his top bunk by stepping on

the lower bunk on December 26, 2007.  Defendants claim that their conduct did not amount to

"deliberate indifference" under the Eighth Amendment.  Defendants state that the units at KTF are

set up in a rectangle shape with four bunk beds and seven lockers around the perimeter and a

common area table with four stools in the middle.  (*See* B-unit diagram, Defendants' Exhibit 1.)

Standing on the stools is prohibited pursuant to KTF housing rules.  (*See* KTF Housing Unit Rules,

Defendants' Exhibit 2.)  On March 29, 2007, inmates raised the issue of the stools being used to

access the top bunk at the Warden's forum.  The stools displayed labels, which read "NO STEPS."

Prison officials stated at the forum that inmates were not to use the stools and were to step on the

lower bed frame to access the top bunk.  Prison officials further stated that the administration was

working on an alternative method for accessing the top bunk.  (*See* KTF Warden's Forum Meeting

Minutes #4, Defendants' Exhibit 3.)

On May 31, 2007, during the Warden's Forum, prisoners again complained of injuries

sustained while accessing the top bunks.  Prison officials responded by stating that prisoners were

able to access the top bunks as suggested and were doing so on a daily basis.  (*See* Warden's Forum

Meeting Minutes #6, Defendants' Exhibit 4.)  Defendants also offer the affidavits of Defendants

Johnson and Beaulieu, who attest that they have personally observed prisoners gaining access to the

top bunks by either stepping on the lower bunk, or using the rungs at the foot of the bed.  (*See*

Defendants' Exhibits 5 and 6.)

Defendants state that Plaintiff was confined at KTF from December 6, 2007, until

January 23, 2008.  Defendants attach a copy of Plaintiff's step I grievance KTF-07-12-1400-03F,

dated December 19, 2007.  In the step I response, Defendant Johnson stated:

> [Plaintiff] was interviewed and complains that he is not being
> provided a chair from the day room so he can step on the chair to get
> up to his top bunk.  The prisoner is instructed that he is not to use a
> day room chair or bongo chair to get up to his top bunk.  He is to use
> the rungs at the foot of the bed as these are more stable.  The prisoner
> has no medical accommodations for a bottom bunk at this time.
> There is nothing about using the rungs at the foot of the bed that
> would be an undue risk or dangerous as described by the grievant.
> No other prisoners are demanding a chair or bottom bunk as a remedy
> for their complaint.  There have been no violations of policy,
> procedure, or statute that have been proven or exist.

(*See* Defendants' Exhibit 8.)

Defendants also offer a copy of the March 13, 2008, annual sanitation inspection

report, in which the sanitarian describes the furnishings of the prisoner sleeping areas as being in

compliance with the American Correctional Association (ACA) code for cell furnishings.  (*See*

Defendants' Exhibit 13.)

In response to Defendants' motion for summary judgment, Plaintiff states that bunk

beds are sold to consumers in society with ladders in order to provide the user with a safe means of

getting onto the top bunk.  In addition, Plaintiff also offers the Test Manual for Bunk Bed

Entrapment Hazards issued in May of 2002 by the U.S. Consumer Product Safety Commission.

- 6 -

However, Plaintiff fails to note that this manual specifically sets forth requirements for bunk beds to reduce or eliminate the risk that children will become trapped in openings or guardrails or other specific structures in the bed.   (*See* Exhibit A to Plaintiff's amendment to his response to Defendants' reply, docket #29.)   Plaintiff further offers the statements of two other inmates that claim to have been injured by the lack of a ladder for gaining access to the upper bunk.   (*See* Exhibit A to Plaintiff's reply in opposition to Defendants' reply to his response to the motion for summary judgment, docket #26.)

In the opinion of the undersigned, the record in this case shows that Defendants' conduct constitutes no more than negligence.   The Eighth Circuit has held that the intentional placement of a prisoner in dangerous surroundings can violate the Eighth Amendment, though mere negligence is not sufficient. *Bibbs v. Armontrout*, 943 F.2d 26, 27 (8th Cir. 1991).   In this case, none of the facts support a finding that Plaintiff was intentionally placed in dangerous surroundings. Therefore, the undersigned recommends that Defendants be granted summary judgment on this claim.

Defendants claim that the are entitled to dismissal of Plaintiff's official capacity claims pursuant to the Eleventh Amendment.   The undersigned agrees that any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished).   However, Plaintiff specifically states that

he is suing Defendants in their individual capacities. Therefore, Defendants' assertion on this matter is completely irrelevant to the instant case.

Defendants also claim that Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in

question has not previously been held to be unlawful.  Rather, in light of pre-existing law, the

unlawfulness of the official's conduct must be apparent.  *Dietrich*, 167 F.3d at 1012; *Wegener v. City

of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light

most favorable to the plaintiff.  Part of the analysis is to determine whether there are any genuinely

disputed questions of material fact.  *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).  Where there

is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge.  "This

would be true notwithstanding that the trial judge found the [defendant] officer to be more credible

than the plaintiff because it is not for the court to make credibility determinations at this stage of the

proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level

of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held
> unlawful, but it is to say that in light of the preexisting law the
> unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert.*

*denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been
> authoritatively decided by the United States Supreme Court, the Court
> of Appeals, or the highest court of the state in which the alleged
> constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, the record in this

case show that Defendants were, at most, negligent.  Therefore, they are entitled to qualified immunity.

In Plaintiff's motion for summary judgment (docket #31), he contends that he is entitled to summary judgment because Defendants were deliberately indifferent to the risk that Plaintiff would be injured attempting to access his upper bunk.  However, for the reasons set forth above, Defendants were, at most, negligent.  Therefore, Plaintiff has not shown that his Eighth Amendment rights were violated.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment.  In addition, Plaintiff has failed to show that he is entitled to summary judgment.  Accordingly, it is recommended that Defendants' motion for summary judgment (docket #13) be granted, Plaintiff's motion for summary judgment (docket #31) be denied, and this case be dismissed in its entirety.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  June 19, 2009

- 11 -